# In the United States Court of Federal Claims

No. 24-242

Filed: August 21, 2025

|  |
|---|
| **AHMAD ALJINDI,** <br><br> *Plaintiff,* <br><br> v. <br><br> **THE UNITED STATES,** <br><br> *Defendant.* |

## ANTI-FILING INJUNCTION

When the courthouse doors are repeatedly forced open for vexation rather than vindication, the Court must act—not in reprisal, but to safeguard its constitutional function. Here, pro se Plaintiff Dr. Ahmad Aljindi ("Dr. Aljindi"), has demonstrated a sustained course of conduct marked by repetitive filings, identical legal theories, and collateral challenges to the Court's authority, despite consistent rulings denying relief. It must end. Therefore, Dr. Aljindi is hereby **ENJOINED** from making further pro se submissions in this jurisdiction without first obtaining leave of the Chief Judge or securing legal representation.[1]

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). A Court may, in its discretion, impose sanctions as it deems appropriate to address conduct that undermines the integrity of the proceedings. *See* RCFC 11. Anti-filing injunctions are an appropriate sanction "where a pro se litigant has engaged in repeated and frivolous lawsuits[.]" *O'Diah v. United States*, 722 F. App'x 1001, 1004 (Fed. Cir. 2018) (citing *Bergman v. Dep't of Commerce*, 3 F.3d 432, 435 (Fed. Cir. 1993); *In re Powell*, 851 F.2d 427, 430–31 (D.C. Cir. 1988)). Anti-filing injunctions are "an extreme remedy[;]" given their extreme nature, courts must "take great care not to unduly impair a litigant's constitutional right of access to the courts." *Hemphill v. Kimberly-Clark Corp.*, 374 F. App'x 41, 44–45 (Fed. Cir. 2010) (citations omitted).

In determining whether to restrict a litigant's future ability to sue, the Court should consider "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Eliahu v. Jewish Agency for Israel*, 919 F.3d

---

[1] Dr. Aljindi filed a new action in this Court after receiving the Show Cause Notice, (Order Denying 60(b) Mot., ECF No. 31), preceding this injunction. *Aljindi v. United States,* Case No. 25-1288 (Hadji, J.). Whether by design or coincidence, the timing of that filing places it outside the scope of this Order.

709, 714 (2d Cir. 2019) (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). Before issuing any sanction, the Court must undertake a careful review of the record and the relevant procedural history. *O'Diah*, 722 F. App'x at 1004. Other Courts have identified specific factors that should be weighed when determining whether to issue an anti-filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing[,] or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate[.]

*Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (per curiam) (quoting *Safir*, 792 F.2d at 24). Before a trial court may impose an anti-filing injunction, the litigant must be provided with notice that such a sanction is being considered and an opportunity to be heard on the question of whether it should be imposed.[2] *Allen v. United States*, 88 F.4th 983, 988 (Fed. Cir. 2023).

This case is Dr. Aljindi's third attempt in this Court to relitigate claims rooted in either his alleged creation of Artificial Intelligence or perceived judicial misconduct. Dr. Aljindi previously initiated two pro se actions, one assigned to the undersigned and the other to another judge of this Court, both seeking $32.7 million in damages. *See* Case No. 21-1295 (Shwartz, J.); Case No. 21-1578 (Tapp, J.). For his first action in April 2021, Dr. Aljindi alleged employment discrimination, intellectual property violations stemming from the purported use of his dissertation, negligence, and judicial misconduct. *Aljindi v. United States*, No. 21-1295C, 2021 WL 4807205, at *1–2 (Fed. Cl. Oct. 15, 2021) (Schwartz, J.). The Court dismissed all claims, finding it lacked jurisdiction over most and that the takings claim was factually deficient. *Id.* Dr. Aljindi appealed that decision; the Federal Circuit affirmed the dismissals but remanded for consideration of a possible copyright infringement claim. *Aljindi v. United States*, No. 21-1295C, 2022 WL 1464476, at *1 (Fed. Cir. May 10, 2022), *cert denied* 143 S. Ct. 436 (2022). On remand, the Court dismissed the allegations as concerning uncopyrightable subject matter, and the Federal Circuit affirmed. *Aljindi v. United States*, No. 21-1295C, 2022 WL 17330006, at *1–2 (Fed. Cl. Nov. 28, 2022), *aff'd*, *Aljindi v. United States*, No. 23-1230C, 2023 WL 2778689, at *2–3 (Fed. Cir. Apr. 5, 2023).

In his second action, filed in July 2021, Dr. Aljindi accused judges in other courts of judicial misconduct stemming from their dismissal of his intellectual property claims and contested the Small Business Administration's ("SBA") response to his application for an Economic Injury Disaster Loan. *Aljindi v. United States*, No. 21-1578C, 2021 WL 5177430 (Fed. Cl. Aug. 30, 2021) (Tapp, J.). The Court dismissed the judicial misconduct claim for lack of jurisdiction and failure to state a claim, noting the absence of a final agency decision and failure

---

[2] Following Dr. Aljindi's motion to reopen this action, the Court directed him to show cause as to why the Court should not subject him to an anti-filing injunction. (Order Denying 60(b) Mot. at 5).

to pursue administrative remedies. *Id.* In that Opinion, the Court recapitulated Dr. Aljindi's litigation in other jurisdictions, reflecting a recurring pattern of vexatious conduct.[3] *Id.* at *1–2.

For his third act—the case at bar—Dr. Aljindi sought $65.4 million for alleged Fifth Amendment takings and retaliation by the Small Business Administration ("SBA"), based on claims that the government misappropriated his copyrighted research linking Information Security, Artificial Intelligence, and Legacy Information Systems. (Compl. at 1–19, ECF No. 1). Within a week of filing suit, Dr. Aljindi moved to disqualify the undersigned, alleging bias based on the outcome of his previous case. (ECF No. 8). The Court dismissed the action and denied his motion to disqualify, finding no evidence of bias or misconduct. (ECF No. 26); *Aljindi v. United States*, No. 24-242, 2024 WL 3024654, at *1, *5 (Fed. Cl. June 17, 2024).[4] On appeal, the Federal Circuit affirmed the dismissal. *Aljindi v. United States*, No. 2024-1997, 2025 WL 440123, at *1 (Fed. Cir. Feb. 10, 2025). The Circuit likewise upheld the denial of disqualification, emphasizing that adverse rulings and docket management do not constitute judicial bias. *Id.* at 5.

Marking yet another chapter in Dr. Aljindi's ongoing effort, Dr. Aljindi returned to the Court seeking to resurrect a series of baseless allegations against both the undersigned and the Circuit. (Order Denying 60(b) Mot. Supp., ECF No. 31-1). Dr. Aljindi framed his request to "reopen" his case under RCFC 60(b) due to what he perceived to be "a brazen pattern of judicial crimes—docket tampering, evidence suppression, factual fabrication, legal perversion, deliberate obstruction of justice, and post-judgment directives designed to thwart accountability." (*Id.* at 1). The filing reflected a broad challenge to prior proceedings and institutional integrity across several forums; Dr. Aljindi used it as a platform to assert claims of appellate misconduct following a bribery scandal, institutional coverups by the Supreme Court, purported hate crimes and abuse involving the Federal Circuit and Court of Federal Claims (including the undersigned), and assertions of discriminatory conduct by the Department of Justice and the Equal Employment Opportunity Commission. (*Id.* at 2).

---

[3] On April 24, 2020, Dr. Aljindi filed a fourth lawsuit in the Central District of California, alleging employment discrimination, negligence, torts, and unauthorized publication of his scientific work. *Aljindi v. United States*, Case No. 8:20-cv-00796 (C.D. Cal. 2021). He named twelve federal officials, claiming they denied him employment and infringed his intellectual property. *See id.* This followed *three* prior suits dismissed as frivolous. *See Aljindi*, No. 21-1578C, 2021 WL 5177430, at *1. The first was rejected as incoherent and implausible. *Aljindi v. United States*, Case No. 8:18-cv-02301, Doc. No. 8 (C.D. Cal. Jan. 8, 2019). The second and third were similarly dismissed, as were the related appeals. *Aljindi v. United States*, Case No. 8:19-cv-01434, Doc. No. 8 (C.D. Cal. Aug. 5, 2019) (finding Dr. Aljindi's complaint as "similarly infirm" as his previous complaint); *Aljindi v. United States*, Case No 19-55926, Doc. No. 13 (9th Cir. Sept. 16, 2019) (appeal dismissed as frivolous); *Aljindi v. United States*, Case No. 8:20-cv-00002, Doc. No. 13 (C.D. Cal. Jan. 24, 2020); *Aljindi v. United States*, Case No. 20-55111 (9th Cir. Aug. 7, 2020) (appeal dismissed as frivolous).

[4] In that Order, the Court again cited Dr. Aljindi's eight other cases in district courts and appeals in the Ninth Circuit against the United States. *Aljindi*, 2024 WL 3024654, at *2 n.2.

On July 31, 2025, the Court denied Dr. Aljindi's request to reconsider the Court's earlier dismissal; it found that Dr. Aljindi's allegations were untimely, unsupported, baseless, and "an affront to judicial impartiality." (Order Denying 60(b) Mot. at 3, ECF No. 31 (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (defining pleading as frivolous "where it lacks an arguable basis either in law or in fact."); *In re Cashion Fam. Tr.*, 669 B.R. 341, 384 (Bankr. D. Nev. 2025) (holding that pleadings and allegations are frivolous when they are baseless and made without a reasonable and competent inquiry))). Given Dr. Aljindi's latest unsupported assertions, his repeated attempts to relitigate matters already resolved, and the continued reliance on unfounded claims, the Court ordered Dr. Aljindi to show cause as to why he should not be enjoined from future filings in this Court. (*Id.* at 5 (citing *Allen*, 88 F.4th at 988)).

In response, Dr. Aljindi, loquacious as ever, filed not one but *two* documents. The first he titled as "Plaintiff's Combined Motion to Reconsider and Reopen Case Under RCFC 59(a) and 60(b) by an Impartial Judge for Fraud on the Court; Motion to Strike and Vacate Order (ECF 31) for Fraud Escalation and Judicial Misconduct; Motion to Disqualify Judge David A. Tapp for Bias and Non-judicial Acts; and Opposition to Show-Cause Order for Anti-Filing Injunction." (Pl.'s Show Cause Resp., ECF No. 32). Notably, the Clerk docketed this filing as "Plaintiff's Opposition to Show Cause Order[.]" The second filing seeks to correct that docket text pursuant RCFC 60(a), citing a clerical error and alleging fraud. (ECF No. 33). The Court addresses these in reverse order.

As an initial point, the text of a docket entry is administrative in nature and does not bear upon the Court's substantive consideration of the filing. It does not affect the merits or outcome of a proceeding. Although Dr. Aljindi's document expands upon the scope of the Court's Show Cause Order, as the docket text would suggest, the Court has reviewed the submission in full, and Dr. Aljindi suffers no prejudice from the docket text itself. Even so, the Court previously directed the Clerk to reject "any future submissions in this case unless they comply with this Court's rules regarding post-dismissal submissions[.]" *Aljindi*, 2024 WL 3024654, at *5. The Court's Order directed a response from Dr. Aljindi *solely* to the Show Cause Order. Accordingly, the docket entry accurately reflects the scope of the Order and does not contain any misrepresentation. Dr. Aljindi's motion to correct the docket text, (ECF NO. 33), is therefore **DENIED**.

The Court next considers Dr. Aljindi's response to the Show Cause Order and finds that it reiterates previously rejected assertions and continues a pattern of unsupported and inflammatory allegations. In fact, it begins with motions for reconsideration, to strike and vacate the Court's order denying relief under RCFC 60(b), and for the undersigned to disqualify himself. (Pl.'s Show Cause Response at 5–8). Before scaling the mountain, the Court begins with the first foothold: Dr. Aljindi's misinterpretations and half-truths.

First, Dr. Aljindi states, "[Judge] Tapp's formally proven hate crimes are an intentional and systemic malicious attack against the judicial impartiality, the United States Constitution, the public trust in our courts, 'WE THE PEOPLE.' He was found guilty and in contempt of our courts, 'WE THE PEOPLE.'" (Pl.'s Show Cause Resp. at 2 (incoherence in original)). He offers

4

no citation to support this proposition, and the undersigned remains unaware of having been convicted of any offense. Second, Dr. Aljindi asserts that "[Judge] Tapp directed the clerk to tamper with the docket, refuse to file the Motion to Reopen (ECF 31-1), issue a defect memo, and forge docket text by falsely labeling it under '69(B)' instead of 60(b)." (*Id.* at 3). Dr. Aljindi's mischaracterization of the Court's administrative procedures is unsupported and immaterial. His RCFC 60(b) motion was filed post-appeal, outside the scope of any operative order or rule, and appropriately triggered a defect memo—an internal notification process for procedurally deficient filings. As previously noted, docket text carries no weight in the Court's substantive analysis. The inclusion of a scrivener's error had no bearing on the Court's reasoning, which references RCFC 60(b) thirty-three times and makes no mention of "Rule 69(b)," a rule that does not exist. More fundamentally, Dr. Aljindi's allegations overlook the fact that the Court *accepted* and ruled on his filing. (Order Denying 60(b) Mot. at 1 ("'Plaintiff's Motion to Reopen Case Under Rule 60(b) for Fraud on the Court,' is accepted and filed by the Court's leave.")). The Court appended the document as a Supplement to the Order, which Dr. Aljindi himself cites. (*Id.* Supp.; Pl.'s Show Cause Resp. at 3). Further, Dr. Aljindi wrongly equates the lack of government representation with malice on the Court's part—a misreading of RCFC 11(c)(3), which expressly authorizes sua sponte sanctions without counsel's involvement. (*See* Pl.'s Show Cause Resp. at 3). Accordingly, the absence of government counsel offers no support for Dr. Aljindi's claim and reflects a misapprehension of the governing rule.

Of greater significance, Dr. Aljindi states that, through this filing, "[Judge] Tapp is formally notified that he is named as Doe 1 in the sealed Bivens complaint filed [August 11, 2025] in [the Central District of California.]" (Pl.'s Show Cause Resp. at 3 (citing Exhibit K)). While Dr. Aljindi's Exhibit K resembles a legal filing, its redactions render its content indiscernible. Further, the undersigned has not been informed of any such litigation, and PACER reflects no record of it. Even so, the mere fact that a judge has been involved in litigation with a party does not, standing alone, compel recusal under any governing rule. *See Green v. 1900 Cap. Tr. II by U.S. Bank Tr. Nat'l Ass'n*, 619 B.R. 121, 133 (D. Md. 2020), *aff'd sub nom. Green v. Shellpoint Mortg. Servicing*, 834 F. App'x 18 (4th Cir. 2021); *Strange v. Islamic Republic of Iran*, 46 F. Supp. 3d 78, 85 (D.D.C. 2014); *In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005); *Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1375 (7th Cir.1994) (en banc); *United States v. Watson*, 1 F.3d 733, 735 (8th Cir. 1993); *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977). Courts reject a per se disqualification rule to prevent judge-shopping through strategic lawsuits against the presiding judge. *United States v. Quintanilla*, 114 F.4th 453, 469 (5th Cir. 2024) (citing *Grismore*, 564 F.2d at 933 ("A judge is not disqualified merely because a litigant sues or threatens to sue him.")). Stated differently, a party may not manufacture a judicial conflict by initiating litigation against the presiding judge. Dr. Aljindi appears to be employing the same tactic he has used with other judges, suing the presiding officer and hoping for the best. While Dr. Aljindi is within his constitutional rights to file suit, exercising that right in this context does little to bolster his position—and certainly does not entitle him to a different judge. Ultimately, Dr. Aljindi offers no basis for reconsideration or vacatur of the Court's prior order, and no grounds warranting recusal by the undersigned.

Having cleared the procedural brush, the Court turns to Dr. Aljindi's cause as to why an anti-filing injunction should not be issued against him. In sum, Dr. Aljindi contends that the proposed injunction infringes his First Amendment and due process rights, amounts to

5

retaliation, and serves as another blow from the judiciary aimed squarely at him. (Pl.'s Show Cause Resp. at 8–10). These arguments are not compelling and do not adequately show cause. While it is true that access to the federal courts constitutes a fundamental right, that right is not absolute. *See Allen*, 88 F.4th at 987. Federal courts possess inherent authority to impose sanctions for conduct undertaken in bad faith, including the pursuit of vexatious or abusive litigation. *Chambers*, 501 U.S. at 46. When a litigant has engaged in this sort of bad faith litigation, Courts must comply with the mandates of due process. *Id.* at 50. Here, the Court's inherent authority to curb Dr. Aljindi's abusive filings is paramount, but the operative term is *abusive*. Dr. Aljindi's First Amendment rights remain intact; the injunction does not impose a categorical bar on his ability to seek redress. Should he possess a meritorious claim, he may still pursue it in this Court—subject to obtaining prior authorization from the Chief Judge. Moreover, the anti-filing order and its limitations apply solely to Dr. Aljindi's pro se submissions. If represented by counsel, he may initiate a meritorious action without seeking such approval. The Court has fulfilled its due process obligations by affording Dr. Aljindi an opportunity to respond to the proposed anti-filing injunction. He has failed to meaningfully do so, choosing instead to till the same barren soil where his arguments have already failed to take root.

Dr. Aljindi fatally interpreted the Court's previous directive as an invitation to collaterally attack the Court's Order. Specifically, Dr. Aljindi asserts that the Order denying him 60(b) relief is evidence of "docket tampering, evidence suppression, factual fabrication, legal perversion, deliberate obstruction of justice, and post-judgment directives designed to thwart accountability[,]" "unworthy of the ink it was written with or the time wasted reading it[.]" (Pl.'s Show Cause Resp. at 2 (citing Order Denying 60(b) Mot.)). Consistent with prior filings, Dr. Aljindi offers neither relevant authority nor coherent reasoning, relying instead on volume as a proxy for substance. Simply put, accusations do not evince cause. The Court has expended considerable resources addressing these matters and finds no justification for continued engagement.

Dr. Aljindi has completed the procedural equivalent of screaming from the rooftops. Beyond this Court, he sought review from the California District Court, the Ninth Circuit, the Federal Circuit, and even the Supreme Court of the United States. (*See supra* pp. 1–3 and note 3). To reiterate the Court's prior finding, "[w]here several courts have consistently found no basis for relief, the issue may rest with the merits of the claims rather than the reasons invoked for dismissal." (Order Denying 60(b) Mot. at 5). While persistence has its place, the continued presentation of misconduct allegations and previously rejected arguments in a terminated proceeding is a misuse of judicial process and must cease. As another tribunal recently recognized:

> Every litigant is entitled to be heard. And this Court has listened — patiently, repeatedly, and at great length. But a litigant is not entitled to be heard forever, nor to use the Court's process as a platform to relitigate settled questions, to hurl accusations untethered to evidence, or to disrupt the fair administration of justice.

*In re Vital Pharms., Inc.,* No. 22-17842-PDR, ___ B.R. ___, 2025 WL 2016291, at *1 (Bankr. S.D. Fla. July 17, 2025). Dr. Aljindi has demonstrated a pattern of vexatious and duplicative litigation. At this juncture, it is not reasonable to conclude that he could maintain an objective,

good-faith expectation of success. Dr. Aljindi's persistent pattern of meritless filings has placed an undue strain on judicial resources and personnel. Filings previously deemed frivolous by other Courts have not deterred Dr. Aljindi. The totality of the record indicates that a lesser sanction, such as an admonition, would likely prove ineffective in curbing future misuse of judicial resources.

Effective immediately, Dr. Aljindi is **ENJOINED** from filing new complaints pro se in this Court without first obtaining leave to file from the Chief Judge. If Dr. Aljindi seeks to file a new complaint in this Court, he shall move for leave to file and explain why the new complaint is timely and properly before this Court. Any such motion must attach a proposed complaint meeting RCFC 8's pleading standards. Dr. Aljindi may file a new complaint if the complaint is signed and filed by an attorney who is duly licensed and authorized to practice law under the laws of at least one state or territory of the United States or the District of Columbia, and is a member in good standing of the Bar of the United States Court of Federal Claims. Finally, the Court **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith because Dr. Aljindi is a vexatious litigant.

**IT IS SO ORDERED.**

*David A. Tapp*
DAVID A. TAPP, Judge